Eastern District of Kentucky
**FILED**

OCT 1 9 2007

AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### NORTHERN DIVISION
### AT COVINGTON

**CIVIL ACTION NO. 2006-124 (WOB)**

S.E., as Next Friend of A.E.;
T.E., as Next Friend of A.E.;
and
A.E., A minor by and through her
Next Friends, S.E. AND T.E.                                    **PLAINTIFFS**


VS.                                    <u>OPINION & ORDER</u>


GRANT COUNTY BOARD OF EDUCATION;
DONALD MARTIN, in his Capacity as
Superintendent and Individually;
RONALD LIVINGGOOD, in his Capacity as
Principal of Grant County Middle School
and Individually;
JAMES LACEY, in his Capacity as Assistant Principal
of Grant County Middle School
and Individually;
AND
CELISA EDMONDSON, in her Capacity as Health Nurse
of Grant County Middle School
and Individually                                    **DEFENDANTS**


**BERTELSMAN, District Judge:**

#### INTRODUCTION

This matter is before the court on the parties' cross-motions for summary judgment. Oral

argument was held on August 3, 2007. At that hearing, Plaintiffs were represented by Kenneth

Henry and Hays Lawson. Defendants were represented by Suzanne Cassidy. Official court

1

reporter, Lisa Wiesman, recorded the proceedings.

Following said hearing, additional briefing was ordered and the pending motions were taken under submission. The court, having heard the parties and being otherwise advised, hereby issues the following Memorandum Opinion and Order.

### FACTUAL BACKGROUND

A.E., the subject Plaintiff in this lawsuit, was a seventh-grade student at Grant County Middle School in May of 2006. A.E. is bi-polar and suffers from Attention Deficit Hyperactivity Disorder (ADHD). To manage these conditions, she takes Adderall. During the 2004-2005 school year, A.E. received the medication daily at lunchtime. Pursuant to school policies and procedures, A.E.'s medication was maintained in the school nurse's office, where she went each day to receive it.

On May 26, 2005, the last day of school, A.E. went to the nurse's office for her lunchtime administration of Adderall, as she had done for the entire school year. At that time, there were four Adderall tablets left. The school nurse, defendant Edmondson, returned the remaining four tablets to A.E. in the original container. A.E. requested to return at the end of the school day to pick up the remaining tablets rather than take them to class with her. The nurse told A.E. to take the remaining medicine with her, even though it was the middle of the school day, and advised A.E. not to give any of the tablets to anyone else.

A.E. had nowhere to keep the medication because she no longer had access to her locker and had neither a purse nor a backpack. Therefore, she gave the medication to her teacher, Mrs. Moore, for safekeeping. The students left the classroom at that time to engage in outside activities. When they returned to the classroom, the teacher returned the medicine to A.E. The

2

students then went to their last class of the day, where there was a different teacher, Ms. Babel.
Ms. Babel showed a movie and served refreshments. Ms. Babel was in and out of the classroom
during the movie.

It was during this class that another student, S.W., noticed A.E.'s medication container
and asked what was in it. S.W. asked for one of the pills. At first, A.E. refused. After continued
pressure, however, A.E. relented and gave S.W. one of her Adderall pills.

Approximately two days later, the Assistant Principal, Defendant James Lacey, called
T.E. (A.E.'s mother) and asked if she was aware of the events. She responded that A.E. had told
her about them when she came home from school that day. Assistant Principal Lacey then
informed T.E. that a deputy sheriff would be coming to interview A.E. about this incident over
the summer break. However, T.E. was never contacted by law enforcement over the summer.

School resumed on August 11, 2005, and A.E. returned to Grant County Middle School
to begin her eighth-grade year. On the first day of school, Assistant Principal Lacey (a
Defendant here in his individual capacity) called A.E. to his office and asked her about what
happened on the last day of school, May 26, 2005. He was aware at this time that a sheriff's
deputy had not contacted A.E. over the summer break.

Assistant Principal Lacey asked A.E. if she remembered the events of the last day of
school and required her to write a statement, which she was then required to date and sign.
Thereafter, A.E. was sent back to class. Plaintiff claims that she was not informed that she was
free to leave the office or that her written statement would be turned over to the police for
purposes of charging her with criminal activity. A copy of the statement was not placed in
A.E.'s school file.

3

Approximately one week after Assistant Principal Lacey met with A.E., he called both A.E. and S.W. to his office. He asked them what had happened on May 26, 2005. A.E. remained silent during this meeting. Assistant Principal Lacey then issued each girl a one-day suspension and told them they would be subject to a six-month probation through the juvenile justice system. This second meeting was held after A.E. had submitted the written statement that was later given to Officer Osborne.

A.E. and her mother were contacted by a court-designated worker (CDW) and notified of a meeting at juvenile court to be held on October 3, 2005. At that time, A.E. was given the option to enter into a diversion agreement or face formal court proceedings. A.E. chose the diversion program. The record does not detail who was present at the meeting or who presented the options to A.E.

Plaintiffs claim that, as a result of the stress of the above described events, A.E. suffered extreme physical pain as well as emotional distress. Plaintiffs also claim that, due to the extent of A.E.'s emotional suffering, her parents requested that she be placed on homebound instruction for the remainder of the 2005-2006 school year.

Plaintiffs also allege disability discrimination in violation of § 504 of the Rehabilitation Act of 1973. A.E. had been tested and determined to be eligible for services and accommodation under § 504. Grant County Middle School developed a "504 Plan" for A.E. to address her needs. However, A.E. and her mother, T.E., claim that the plan was never fully implemented. Plaintiffs claim that A.E. was not consistently given her Adderall and T.E. was not advised of when and why the medication was not given. Plaintiffs also claim that the required annual "504 Plan" review meetings either did not happen, or happened too late in the school year to be of benefit to

4

A.E.

Plaintiffs further claim that the alleged failure of Grant County Schools to provide notice and a hearing, prior to causing a juvenile complaint to be filed against A.E., violated her rights under the Rehabilitation Act. Plaintiffs claim that the juvenile complaint constituted a change in her educational placement. Such a change without due process constitutes a failure of Grant County Schools to provide A.E. with a Free and Appropriate Public Education (FAPE).

Plaintiffs have conceded that discovery has revealed that several of their counts in the Complaint should be dismissed, including Counts I, II, VII, VIII, XI, XIII, XIV, and XV. The counts that remain are Count III (disability discrimination under 29 U.S.C. § 794, §504 of the Rehabilitation Act), Count IV (violation of Fourth Amendment right to be free from unreasonable search and seizure), Count V (violation of Fifth Amendment right not to incriminate oneself), Count VI (conspiracy to commit the above), and Count IX (refusing or neglecting to prevent the above). Also remaining are the state law claims of Count X (negligence) and Count XII (negligent supervision).

## ANALYSIS

### Plaintiffs' Federal Fourth and Fifth Amendment Claims are Barred by the doctrine of Heck v. Humphrey

Plaintiffs bring a 42 U.S.C. § 1983 action against the defendants for damages caused by an alleged violation of her Fourth Amendment rights, by reason of being called to the Assistant Principal's office and being required to remain there, and her Fifth Amendment rights, by reason of the Assistant Principal's taking A.E.'s statement, without giving her *Miranda* warnings,

5

knowing it would be used in state juvenile proceedings against her.  Upon initiation of the matter

in the juvenile court on the basis of the statement, plaintiff entered into a diversion program.

Such  programs have different names in different jurisdictions, but they are all a form of

anticipatory probation.  If the diversion program is successfully completed by the defendant's

good conduct for the diversion period (and perhaps by the fulfillment of other conditions), the

prosecution is dropped without record.  *See* discussion in *Cissell v. Hanover Ins. Co.,* 647 F.

Supp. 757, 758 (E.D. Ky. 1986)(malicious  prosecution**)**.  In *Cissell,* this court held that entry in

a diversion program was not a favorable termination, as is required for a cause of action for

malicious prosecution and for the § 1983 action analogous to the same. *Id.*

The doctrine of *Heck v.  Humphrey,* 512 U.S. 477 (1994), was unnecessary to the

analysis in *Cissell,* but must be adverted to here because this is not a malicious prosecution

action.  In *Heck,* the Supreme Court held that, where a  § 1983 action to succeed requires the

court to make a finding that a conviction underlying the action was invalid, the § 1983 action is

barred.  Rather, the plaintiff in the § 1983 action must proceed by habeas corpus.  As stated in

*Heck v. Humphrey*:

> The common-law cause of action for malicious prosecution provides the
> closest analogy to [§ 1983] claims  . . . .
>
> One element that must be alleged and proved in a malicious prosecution action is
> termination of the prior criminal proceeding in favor of the accused.  This requirement
> "avoids parallel litigation over the issues of probable cause and guilt  . . . and it precludes
> the possibility of the claimant [sic] succeeding in the tort action afer having been
> convicted in the underlying criminal prosecution, in contravention of a strong judicial
> policy against the creation of two conflicting resolutions arising out of the same or
> identical transaction."  Furthermore, "to permit a convicted criminal defendant to proceed
> with a malicious prosecution claim would permit a collateral attack on the conviction
> through the vehicle of a civil suit. . . .  We think the hoary principle that *civil tort actions*
> *are not appropriate vehicles for challenging the validity of outstanding criminal*
> *judgments applies to § 1983 damages actions that necessarily require the plaintiff to*

6

> prove the unlawfulness of his conviction or confinement, just as it has always applied to
> actions for malicious prosecution.

*Id.* at 484-6 (citations omitted; emphasis added).

The Court went on to hold that to bring a § 1983 action, in which success would "render

a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has

been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal

. . . or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486.

If the civil suit would impugn the conviction, it must be dismissed. *Id.; Wallace v. Kato,* __

U.S. __, 127 S. Ct. 1091, 1098 (2007)(re-approving the doctrine of *Heck).*

Plaintiffs argue that the doctrine of *Heck* does not apply here because diversion should

not be treated as a conviction. This court has twice held that it should, however. *Cissell,* 647 F.

Supp. at 758; *Everage v. Whitaker,* No. 05-CV-115-KKC, 2006 WL 782744 (E.D.Ky.)(false

arrest).

Judge Caldwell, in her opinion in *Everage,* cites numerous authorities in support of the

conclusion that, both for malicious prosecution and other § 1983 actions, entry into diversion in

the underlying criminal case will preclude the § 1983 plaintiff's proceeding, unless the diversion

can be reopened and set aside.   The § 1983 plaintiff's pursuing this course is unlikely, however,

because it would expose him or her to the criminal prosecution which was avoided by agreeing

to the diversion. The plaintiff cannot have her cake and eat it too. In *Everage,* Judge Caldwell

quotes the following from *Konon v. Fornal,* 612 F. Supp. 68, 72 (D. Conn.1985):

> [D]isposition through the accelerated rehabilitation law requires no findings of
> fact with respect to the defendant's guilt or innocence. However, it is unlikely
> that the accused will choose disposition pursuant to section 54-56e if there was no
> probable cause for his arrest. . . . *If disposition pursuant to the accelerated
> rehabilitation law were held to leave open the plaintiff's right to bring a*

7

> *subsequent section 1983 action for false arrest and false imprisonment, fewer prosecutors would be willing to consent to such dispositions. The net result would be that the clear policy behind the accelerated rehabilitation law - to give one accused of a crime not of a serious nature, who would probably not offend in the future, and who is a first time offender, a one-time chance at personal rehabilitation without incurring the risk of a full trial on the merits [of the information] - would be thwarted. In light of these policy considerations, the plaintiff's section 1983 claim for false imprisonment is barred.*

*Id.* at *8, n. 8 (emphasis in the original).

The decision of the Sixth Circuit in *Morris v. City of Detroit,* 211 Fed. Appx. 409 (6th Cir. 2006), is controlling. Similar to the present action, the plaintiff in *Morris* had been sentenced to probation in the juvenile court following an allegedly unlawful investigation. The *Morris* plaintiff claimed that the investigation culminated in a confession that was alleged to have been coerced.

The *Morris* court held that "a challenge to a criminal investigation that led to a conviction necessarily challenges the validity of the conviction and therefore falls within the *Heck* framework." *Id.* at 411 (citing *Dusenbery v. Graves,* 187 F.3d 635, 1999 WL 617932 *1 (6th Cir.)(allegedly false search warrant affidavit)). In the opinion of this court, the sentence of probation in *Morris* is essentially the same as the diversion agreement in the instant case.[1]

Also directly on point is *Gilles v. Davis,* 427 F.3d 197 (3d Cir. 2005). There, § 1983 claims, some based on malicious prosecution and others on alleged First Amendment violations, were held to be barred by the *Heck* doctrine, where the plaintiff had accepted pretrial diversion in the underlying criminal case. The court reasoned:

---

[1] To the extent the cases cited by plaintiffs are in conflict with this analysis, the court respectfully disagrees with and declines to follow them. *See, e.g., Butts v. City of Bowling Green,* 374 F. Supp.2d 532 (W.D. Ky. 2005). The court notes that this decision was reached prior to the Sixth Circuit decision in *Morris, supra.*

When a criminal defendant is selected for and decides to participate in [a pretrial diversion] program, he avoids trial and potential jail time, and receives expungement of the record in exchange for successfully completing a probationary period. . . . .

. . . .

[The *Heck* doctrine is] equally applicable in this context. [The plaintiff's] underlying disorderly conduct charge *and his § 1983 First Amendment Claim* require answering the same question–whether [plaintiff's] behavior constituted protected activity or disorderly conduct. If [the diversion program] does not constitute a favorable termination, success in the § 1983 claim would result in parallel litigation over whether [plaintiff's] activity constituted disorderly conduct and could result in a conflicting resolution arising from the same conduct.

427 F.3d at 209 (emphasis added).

The court, citing many cases, went on to hold that the diversion program did not constitute a favorable determination of the case for the plaintiffs and that all of the § 1983 claims, both analogous to malicious prosecution and otherwise, were barred by the *Heck* doctrine.

As stated above, this court sees no distinction for these purposes between diversion, which is anticipatory probation, and probation imposed following a conviction. This court also agrees with the authorities holding that it would constitute poor public policy to permit a criminal defendant to obtain lenient treatment by submitting to a benevolent program of this kind and then turn around and sue the arresting officer.

### *Additional Claims Involving the Juvenile Proceedings*

The *Heck* issue requires dismissal of all the federal claims pertaining to the alleged unconstitutional seizure and confession, including Counts IV, V, VI, IX, and X. The court does not reach and expresses no opinion on whether the Assistant Principal was acting as an agent of the police to the degree that he was required to administer *Miranda* warnings to the minor

9

plaintiff or on the Fourth Amendment claims.

However, the court will address the Rehabilitation Act claim, to the extent it does not involve the arrest.

### *Disability Discrimination under 29 U.S.C. § 794 and § 504 of the Rehabilitation Act*

Plaintiffs have alleged claims for disability discrimination and violations of 29 U.S.C. § 794 and § 504 of the Rehabilitation Act. These claims are based upon Grant County Middle School's alleged failure to implement her § 504 plan, causing a juvenile complaint to be filed against A.E., and for having suspended A.E. without providing a hearing prior to either act. Plaintiffs originally included claims for violations of the Individuals with Disabilities in Education Act (IDEA), but has agreed with Defendant that those claims should be dismissed. Defendant argues that these remaining disability-based claims should also be dismissed because Plaintiffs have failed to exhaust the administrative remedies as is required under IDEA. Plaintiffs admit that the exhaustion requirements for the two acts are identical. (Plaintiffs' Response to Motion for Summary Judgment, Doc. # 42, p. 11). Plaintiffs claim, however, that they are not required to exhaust the administrative remedies because A.E. is now being home-schooled and to require exhaustion would be futile.

In *N.L. v. Knox County Schools*, 315 F.3d 688 (6th Cir. 2003), the Sixth Circuit addressed the purposes of both IDEA and the Rehabilitation Act and stated:

> The purpose of the IDEA is to guarantee children with disabilities access to a free and appropriate public education. Under the IDEA, a school system conducts an initial evaluation to determine if a child qualifies for special education or related services in the form of an Individualized Education Program ("IEP") . . . . .

10

> The purpose of section 504 is to ensure that disabled individuals have the opportunity to participate in or benefit from the aid, benefit, or service of any program receiving federal financial assistance. Programs receiving federal financial assistance include public schools.

*Id.* at 689-90.

"The IDEA permits plaintiffs to a file a complaint 'with respect to *any matter relating to* ... the provision of a free and appropriate public education.' Thus, we have held that whenever a plaintiff brings a claim that is 'educational in nature' purporting to challenge the provision of educational services by a local school district, the claim is 'presumptively redressable' through the IDEA's administrative procedures. This holds true regardless of what statute the plaintiff purports to cite as the basis of the suit." *Ellenberg v. New Mexico Military Institute*, 478 F.3d 1262, 1280-81 (10th Cir. 2007)(internal citations and omission omitted, emphasis in the original).

There are a few narrow exceptions to the exhaustion requirement under the IDEA. *Mallory ex rel. BM v. Knox County School Dist.*, 2006 WL 3484015 at *7. Exhaustion is not required where application of the administrative procedures would be futile or inadequate to protect the plaintiff's rights or if the plaintiff did not receive full notice of their rights under the IDEA. *Id.* However, "parents may not avoid the administrative process through 'the unilateral act of removing their child from a public school.'" *Id. (quoting Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000)). The plaintiff bears the burden to prove futility. *Id.*

In this case, as in *Mallory*, the claims of the Plaintiff are educational in nature as they seek to redress alleged deficiencies in her free and appropriate education plan.

The Plaintiffs claim that to exhaust the administrative remedies would be futile, because she is now being home-schooled, is without merit. As held in *Mallory*, the parents' choice to

11

remove the child from the public school does not remove the exhaustion requirement.

In the present case, the parents chose to home-school A.E.  There was no attempt to appeal the actions of the Grant County Middle School via the administrative process that could and may have provided redress for the alleged wrongs.

Based upon the foregoing, Defendant's motion for summary judgment as to Count III must be granted because the plaintiffs failed to exhaust their administrative remedies.

Inasmuch as all of the Federal claims have been dismissed, the court declines to exercise jurisdiction over the remaining state law claims.

Therefore, the court being advised,

**IT IS ORDERED as follows:**

1.  That Defendant's motion for summary judgment (Doc. #38) be, and it is, hereby **granted**;

2.  That Plaintiffs' motion for partial summary judgment (Doc. #34) be, and it is, hereby **denied**;

3.  That Counts I, II, VII, VIII, XI, XIII, XIV and XV are **voluntarily dismissed**, with prejudice, by agreement of the parties;

4.  That Counts IV, V, VI, and IX are **dismissed**, with prejudice, based upon the doctrine of *Heck v. Humphrey*;

5.  That Count III is **dismissed**, with prejudice, based upon Plaintiffs' failure to exhaust administrative remedies;

6.  That Counts X and XII are **dismissed**, without prejudice; and

7.  That a separate Judgment shall enter concurrently herewith..

12

This 19th day of October, 2007.

 Signed By:

**William O. Bertelsman** WOB

**United States District Judge**

13